**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AUG 2 1 2013

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 13-227 |
| | ) | (18 U.S.C. §§2, 371, |
| v. | ) | 666(a)(1)(B), 1341; |
| | ) | 26 U.S.C. §7206(1)) |
| NICHOLAS TROMBETTA | ) | **[UNDER SEAL]** |
| NEAL PRENCE | ) | |

## INDICTMENT

### COUNTS ONE THROUGH THREE

(18 U.S.C. §1341)

**Fraud Involving Wingspan and BOSS**

The Grand Jury charges:

### Introduction

At all times material to this Indictment:

1.    The defendant, NICHOLAS TROMBETTA, was the founder and Chief Executive Officer of an entity known as the Pennsylvania Cyber Charter School (hereinafter PA Cyber).  As CEO of PA Cyber his annual salary for 2008 through 2012 ranged from approximately $127,000 to $141,000.

2.    PA Cyber, founded in and around 2000, was a school that provided online educational services, that is, school courses in a wide range of subjects (math, English, history, etc.) delivered over the internet to a student's home computer, and, by

-1-

2011, to more than 10,000 students, from kindergarten through the twelfth grade, throughout the Commonwealth of Pennsylvania. PA Cyber operated as a Pennsylvania non-profit corporation with its headquarters located at 1200 Midland Avenue, Midland, PA. (A cyber charter school is a self-managed public school and for all intents and purposes functions as a public school district, like any other in Pennsylvania, except that its course offerings are provided to the students via computer over the internet, that is, "online," and it draws students from a broader geographical area which may include the entire state of Pennsylvania.)

3.   PA Cyber was funded by federal, state and local tax revenues. For each child that attended PA Cyber, that child's home school district would provide payment to PA Cyber of approximately 80% of the cost of educating that child in his or her home school district. From 2006 through 2012, PA Cyber had revenue that ranged from approximately $38,000,000 per year to in excess of $115,000,000 per year.

4.   The National Network of Digital Schools Management Foundation (hereinafter "NNDS") was a Pennsylvania non-profit corporation with its main office located at 1000 Third Street in Beaver, Pennsylvania. NNDS was founded in or around 2005 by Defendant NICHOLAS TROMBETTA. NNDS provides educational management services and online course materials (curriculum) for cyber

-2-

education.    Throughout   the   period   of   this   Indictment   the
substantial  majority  of  the  income  of  NNDS  came  from  PA  Cyber
through  a  management  services  contract  between  NNDS  and  PA  Cyber
and from NNDS's sale of curriculum to PA Cyber.   From 2006 through
2011 NNDS had revenue that ranged from approximately $22,000,000
per year to in excess of $50,000,000 per year.    NNDS entered into
a  management  services  contract  with  an  entity  known  as  the  Avanti
Management Group (AMG) whereby NNDS agreed to pay AMG a percentage
of its revenue in exchange for various services.   From the time of
its founding until Defendant NICHOLAS TROMBETTA retired as CEO of
PA Cyber in July of 2012, Defendant NICHOLAS TROMBETTA effectively
controlled the management and operation of NNDS.

       5.    The  Avanti  Management  Group  (hereinafter  AMG)  was  a
for profit company founded by Defendant NICHOLAS TROMBETTA in 2008.
Throughout the period of this Indictment the substantial majority
of AMG's income came from the management services contract that AMG
had with NNDS.   By the terms of the contract, which was put in
place  by  Defendant  NICHOLAS  TROMBETTA,  AMG  agreed  to  provide
management  services  to  NNDS.    From  2008  through  2011  AMG  had
revenue that ranged from approximately $900,000 in 2008 to over
$9,200,000  in  2011.    Nearly  all  of  this  revenue  was  from  the
contract with NNDS.

-3-

6.    Defendant NICHOLAS TROMBETTA recruited persons known to the grand jury as RB, BG, RM and JP to serve as "straw" owners of AMG, that is, as persons who would take direction regarding the operation and management of AMG from Defendant NICHOLAS TROMBETTA. AMG was founded based on an explicit agreement entered into by and between Defendant NICHOLAS TROMBETTA and the four straw owners. The substance of this agreement was that the four straw owners would be the "on paper" owners and operators of AMG for a period of time, at the end of which Defendant NICHOLAS TROMBETTA would assume an eighty percent (80%) ownership share of AMG and the "on paper" ownership share of each of the straw owners would drop from twenty five percent (25%) to five percent (5%). In exchange for each of the straw owners agreeing to relinquish their respective twenty five percent share of the ownership, each of the original straw owners was to receive a $500,000 payment. From the founding of AMG in 2008 until he retired as CEO of PA Cyber in July of 2012, Defendant NICHOLAS TROMBETTA effectively controlled the personnel, operations and resources of AMG.

7.    The Buckeye Online School for Success (hereinafter BOSS), an Ohio based provider of cyber/on-line education, was founded by Defendant NICHOLAS TROMBETTA and others in 2003. From 2003 through 2006 Defendant NICHOLAS TROMBETTA exerted substantial influence over the operations and personnel of BOSS.

8. Wingspan, LLC and Wingspan New Mexico (hereinafter Wingspan) were companies owned and operated by persons known to the grand jury as ST and CS. During the time frame 2004 - 2006, Wingspan was involved with Defendant NICHOLAS TROMBETTA in an effort to promote and sell on-line education to school districts in New Mexico that had a significant population of Native American students.

9. One2One Enterprises (hereinafter One2One) was founded in January of 2006 by Defendant NICHOLAS TROMBETTA and his sister, Elaine Trombetta Neill (not charged herein). One2One was, in theory, a company that provided research and business development consulting but, in truth and in fact, Elaine Trombetta Neill had no experience or expertise in business development or consulting. In actuality, One2One served as a vehicle to allow Defendant NICHOLAS TROMBETTA to use his position of influence over PA Cyber, NNDS, AMG, BOSS, Wingspan and other entities in the private sector to covertly channel money to himself, to Elaine Trombetta Neill, to other family members and to other persons. One2One was not a part of, nor in any way affiliated with, either PA Cyber or NNDS, but was instead wholly owned and controlled by Defendant NICHOLAS TROMBETTA and his sister, Elaine Trombetta Neill. One2One was listed as a Schedule C business on the joint tax returns filed by Elaine Trombetta Neill and her spouse.

-5-

10.   Martlin Management was a company owned and operated by an individual known to the grand jury as MD.   During the time frame of the scheme to defraud, Defendant NICHOLAS TROMBETTA used Martlin Management to collect money from BOSS and Wingspan and forward that money to One2One to be deposited into the One2One bank account.

11.   In the annual reports of PA Cyber the defendant NICHOLAS TROMBETTA was identified alternately as the "Chief Executive Officer" (hereinafter CEO) or "Superintendent" of PA Cyber and as such he qualified under the Pennsylvania Public Official and Employee Ethics Act as a "Public Employee".

**THE SCHEME**

12.   From in and around 2004, and continuing thereafter until in and around November 2008, in the Western District of Pennsylvania and elsewhere, the defendant, NICHOLAS TROMBETTA, devised and intended to devise a scheme and artifice to defraud PA Cyber and NNDS and for obtaining money and property from PA Cyber and NNDS by means of false and fraudulent pretenses, representations and promises, well knowing at the time that the pretenses, representations and promises were false and fraudulent when made, which scheme and artifice to defraud, was in substance as follows:

-6-

13.   It was a part of the scheme and artifice to defraud that the defendant, NICHOLAS TROMBETTA, used his influence and control over employees of PA Cyber and NNDS to enrich himself.  He did this by using PA Cyber and NNDS employees to perform work for out of state companies (such as BOSS and Wingspan) and then secretly directed payments from these out of state companies to himself and his sister. Pursuant to the instructions of Defendant NICHOLAS TROMBETTA, payments from these companies were deposited to the bank account of One2One when, in fact, One2One had not performed any work or provided any service.

14.   It was further a part of scheme and artifice to defraud that the defendant, NICHOLAS TROMBETTA, caused employees of PA Cyber and NNDS to travel to New Mexico and to otherwise do work for, on behalf of and for the benefit of the entity identified as Wingspan, a company attempting to promote on-line education in school districts in New Mexico that had a significant Native American population.  These employees of PA Cyber, and later NNDS, provided services and various areas of consultation and technical support, including curriculum utilization and development, information technology and computer utilization, all while being compensated solely by PA Cyber and/or NNDS.

15.   It was further a part of the scheme and artifice to defraud that the defendant, NICHOLAS TROMBETTA, in and around late

-7-

2005 or early 2006, caused an individual known to the grand jury as MD to collect $62,500 owed by Wingspan to PA Cyber and/or NNDS, for services and/or materials that had been provided in connection with efforts to promote on-line education in New Mexico.   After MD collected $62,500 from Wingspan, Defendant NICHOLAS TROMBETTA instructed MD to forward the funds to One2One, rather than to PA Cyber or NNDS.

16.   It was further a part of the scheme and artifice to defraud that Defendant NICHOLAS TROMBETTA then deposited and caused to be deposited to the One2One bank account, the $62,500 in payments from Wingspan (through Martlin Management) for the services and/or materials provided to Wingspan's on-line education project in New Mexico by employees of PA Cyber and NNDS.

17.   It was further a part of the scheme and artifice to defraud that the defendant, NICHOLAS TROMBETTA, caused employees of PA Cyber and NNDS to travel to Ohio and to do work for, on behalf of and for the benefit of BOSS, an Ohio based cyber school.   These employees of PA Cyber and NNDS provided services in the areas of human resources consultation, special education consultation, public relations, information technology, computer utilization, the provision of email and in other areas, all while being compensated solely by PA Cyber and NNDS.

18. It was further a part of the scheme and artifice to defraud that Defendant NICHOLAS TROMBETTA, throughout the time frame of the scheme to defraud, caused an individual known to the grand jury as MD to collect more than $600,000 owed by BOSS to NNDS, for services and/or materials that had been provided in connection with the work of BOSS. After MD collected more than $600,000 from BOSS, Defendant NICHOLAS TROMBETTA instructed MD to forward $400,000 to NNDS and more than $200,000 to One2One.

19. It was further a part of the scheme and artifice to defraud that the defendant, NICHOLAS TROMBETTA, caused PA Cyber employees and resources to be utilized to provide "virtual" classroom teaching and courses to students associated with Wingspan in New Mexico and with BOSS in Ohio.

20. It was further a part of the scheme and artifice to defraud that the defendant, NICHOLAS TROMBETTA, in and around late 2005 or early 2006, approached the management of BOSS and advised that the services that had previously been provided by employees of PA Cyber and NNDS, without cost to BOSS, would no longer be provided free of charge. However, Defendant NICHOLAS TROMBETTA advised BOSS that he (TROMBETTA) would arrange for the same services to be provided to BOSS by One2One (see paragraph 9 above) for a fee of $6500 per month, payable to One2One.

-9-

21.   It was further a part of the scheme and artifice to defraud that the defendant, NICHOLAS TROMBETTA, used his influence and control over operations and personnel of PA Cyber and NNDS to fulfill the obligations of the agreement between BOSS and One2One by continuing to utilize the employees of PA Cyber and NNDS to provide services to BOSS.   None of the employees of PA Cyber and NNDS who did work for BOSS were aware of the arrangement created by Defendant NICHOLAS TROMBETTA between One2One and BOSS.   Nor were they aware that, at Defendant NICHOLAS TROMBETTA'S direction, BOSS was paying One2One $6500 per month, to the personal benefit of Defendant NICHOLAS TROMBETTA.

22.   It was further a part of the scheme and artifice to defraud that from early 2006 through November of 2008, false and fraudulent invoices, on One2One letterhead, were prepared and sent from One2One in Aliquippa, PA, in the Western District of Pennsylvania, through the mail to the offices of BOSS in eastern Ohio.   These false and fraudulent invoices, in the amount of $6500 a month, were itemized for services supposedly provided by One2One to BOSS including "Technical Support", "Curriculum Development", "Professional and Leadership Development", "Web Site Revisions", "Title I and Special Ed Compliance", "Administrative Coaching Sessions", "Strategic Planning Sessions", "Analysis of Admission Trends and Marketing Needs", "Server and Storage Update" and "On

Site Visits by Educational Consultant."   The invoices were false and fraudulent in that One2One had no employees, no expertise to offer, provided no services or support to BOSS and in truth and in fact did nothing for BOSS but send invoices outlining charges for services that One2One had not in fact provided.   Each invoice sent by One2One to BOSS throughout the period 2006 through 2008 resulted in a check being issued on behalf of BOSS and sent back through the mail to One2One in Aliquippa, PA, in an amount corresponding to the charges itemized on the invoice, almost always $6500.

23.   It was further a part of the scheme and artifice to defraud that the services which were provided to BOSS throughout the period 2006 through 2008, as Defendant NICHOLAS TROMBETTA well knew, were not in fact provided by One2One, but continued to be provided by employees of PA Cyber and NNDS at the direction and under the control of Defendant NICHOLAS TROMBETTA.   The employees of PA Cyber and NNDS who performed the services for the benefit of BOSS in Ohio received no additional compensation for this work beyond the salaries they were paid by their employers, PA Cyber and NNDS.

24.   It was further a part of the scheme and artifice to defraud that the creation of One2One, the utilization of false and fraudulent invoices from One2One to BOSS, and the payments sent by BOSS to One2One, all resulted from Defendant NICHOLAS TROMBETTA's

position as CEO of PA Cyber, and were conducted in such a manner as to conceal payments that provided income to Defendant NICHOLAS TROMBETTA in addition to his PA Cyber salary.

25.   It was further a part of scheme and artifice to defraud that in 2006 Defendant NICHOLAS TROMBETTA deposited and caused to be deposited to the One2One bank account, $59,000 in payments from BOSS for services provided to BOSS by employees of PA Cyber and NNDS.

26.   It was further a part of the scheme and artifice to defraud that in 2007 Defendant NICHOLAS TROMBETTA deposited and caused to be deposited to the One2One bank account, $65,000 in payments from BOSS for services provided to BOSS by employees of PA Cyber and/or NNDS.

27.   It was further a part of the scheme and artifice to defraud that in 2008 Defendant NICHOLAS TROMBETTA deposited and caused to be deposited to the One2One bank account, $48,750 in payments from BOSS for services provided to BOSS by employees of PA Cyber and/or NNDS.

28.   It was further a part of the scheme and artifice to defraud that throughout the period 2006 through 2008, neither the Board of Directors of PA Cyber nor the Board of Directors of NNDS were aware of, nor approved of, the arrangements between Defendant NICHOLAS TROMBETTA and Wingspan and Defendant NICHOLAS TROMBETTA

and BOSS, both of which resulted in payments flowing to the bank account of One2One, said payments constituting compensation for work performed by PA Cyber and NNDS employees.

29.   It was further a part of the scheme and artifice to defraud that from 2006 through 2008, Defendant NICHOLAS TROMBETTA utilized an ATM/Debit card to access funds in the One2One bank account to pay for purely personal expenses such as grocery bills, restaurant charges, personal travel and other personal expenditures.

30.   It was further a part of the scheme and artifice to defraud that from 2006 through 2008, Defendant NICHOLAS TROMBETTA and his sister, Elaine Trombetta Neill, had the use and beneficial enjoyment of more than $440,000 that flowed through the One2One bank account from payments made by Wingspan and BOSS for services and/or materials that were actually provided by employees of PA Cyber and NNDS.

31.   On or about the dates listed below, each date and event constituting a separate count, in the Western District of Pennsylvania, for the purpose of executing or attempting to execute the above described scheme and artifice to defraud, Defendant NICHOLAS TROMBETTA knowingly caused his sister, Elaine Trombetta Neill, to take and receive from an authorized depository for mail the following matters, that is, envelopes mailed from the

-13-

Educational Service Center in Ohio containing checks bearing the check number and date indicated and for the amounts shown, mailed on behalf of BOSS to One 2 One in Aliquippa, PA, in response to an invoice sent as described above:

| Count No. | Check No. | Mailing Date/On or About | Amount of Check | Recipient of Mailing |
|---|---|---|---|---|
| One | 013078 | August 28, 2008 | $6500 | Elaine Neill, dba One2One Enterprises 611 Owens Street, Aliquippa, PA 15001 |
| Two | 013377 | October 13, 2008 | $6500 | Elaine Neill, dba One2One Enterprises 611 Owens Street, Aliquippa, PA 15001 |
| Three | 013595 | November 10, 2008 | $3250 | Elaine Neill, dba One2One Enterprises 611 Owens Street, Aliquippa, PA 15001 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

-14-

## COUNT FOUR

(18 U.S.C. §666(a)(1)(B))

### Fraud Involving Computer Purchases
### by PA Cyber in 2009 and 2010

The Grand Jury further charges:

32.  The allegations of Paragraphs 1 through 3 above are realleged and incorporated herein by reference thereto as though they were fully set forth herein.

33.  At all times material to this Indictment, Pennsylvania Cyber Charter School (hereinafter PA Cyber) was an organization that received federal funds in excess of $10,000 during the one-year period beginning January 1, 2010, and ending December 31, 2010.

34.  At all times material to this Indictment, Defendant NICHOLAS TROMBETTA, as Chief Executive Officer of PA Cyber, was an "agent" of PA Cyber as defined in Title 18, United States Code, Section 666(d)(1).   His duties included supervision of the procurement process whereby PA Cyber entered into contracts for goods and services on behalf of its students, such as the purchase of computers for use by PA Cyber students.

35.  The allegations of Paragraph 5 above regarding The Avanti Management Group (hereinafter AMG) are realleged and

incorporated herein by reference thereto as though fully set forth herein.

36. At all times material to this Indictment, a technology company known to the grand jury (hereinafter Technology Company) manufactured personal computers for use in the on-line cyber education market. In 2009 and 2010, the Technology Company was awarded a contract by PA Cyber to supply laptop computers to PA Cyber for use by PA Cyber's students. This contract involved the sale by the Technology Company to PA Cyber of 3000 laptop computers in 2009 and 4000 laptop computers in 2010.

37. In and around December of 2010 in the Western District of Pennsylvania, Defendant NICHOLAS TROMBETTA did accept and agree to accept, a thing of value, that is, a payment totaling $350,000 from the Technology Company to AMG, intending to be influenced and rewarded in connection with a transaction and series of transactions of PA Cyber, that is, the purchase of computers by PA Cyber, for use by its students, from the Technology Company, involving $5,000 or more (said payment of $350,000 representing a payment by the Technology Company to AMG of $50 for each computer purchased by PA Cyber in 2009 and 2010).

All in violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT FIVE

(18 U.S.C. §666(a)(1)(B))

### Fraud Involving Computer Purchases
### by PA Cyber in 2011

The Grand Jury further charges:

38.   The allegations of Paragraphs 1 through 3 above are realleged and incorporated herein by reference thereto as though they were fully set forth herein.

39.   At all times material to this Indictment, PA Cyber was an organization that received federal funds in excess of $10,000 during the one-year period beginning January 1, 2011, and ending December 31, 2011.

40.   At all times material to this Indictment, Defendant NICHOLAS TROMBETTA, as Chief Executive Officer of PA Cyber was an "agent" of PA Cyber as defined in Title 18, United States Code, Section 666(d)(1).   His duties included supervision over the procurement process whereby PA Cyber entered into contracts for goods and services on behalf of its students, such as the purchase of computers for use by PA Cyber students.

41.   The allegations of Paragraph 5 above regarding AMG are realleged and incorporated herein by reference thereto as though fully set forth herein.

-17-

42. At all times material to this Indictment, a technology company known to the grand jury (hereinafter Technology Company) manufactured computers for use in the on-line cyber education market. In 2011, the Technology Company was awarded a contract to supply laptop computers to PA Cyber for use by PA Cyber's students. This contract involved the sale by the Technology Company to PA Cyber of 4000 laptop computers in 2011.

43. In and around July of 2011 in the Western District of Pennsylvania, Defendant NICHOLAS TROMBETTA did accept and agree to accept, a thing of value, that is, a payment totaling $200,000 from the Technology Company to AMG, intending to be influenced and rewarded in connection with a transaction and series of transactions of PA Cyber, that is, the purchase of computers by PA Cyber, for use by its students, from the Technology Company, involving $5,000 or more (said payment of $200,000 representing a payment by the Technology Company to AMG of $50 for each computer purchased by PA Cyber in 2011).

All in violation of Title 18, United States Code, Section 666(a)(1)(B).

-18-

## COUNT SIX

(18 U.S.C. §371)

### Tax Conspiracy

The Grand Jury further charges:

### THE CONSPIRACY AND ITS OBJECTS

44.   From in and around January 2006 and continuing thereafter until in and around July 2012, in the Western District of Pennsylvania and elsewhere, the defendants, NICHOLAS TROMBETTA and NEAL PRENCE, did knowingly and willfully conspire and agree together and with other persons, including Elaine Trombetta Neill (not charged herein), to defraud the United States, that is, they did conspire to impede, impair, obstruct and defeat the lawful functions of the Internal Revenue Service of the United States Department of the Treasury in the proper and accurate ascertainment, computation, assessment, and collection of revenue, that is, income taxes.

45.   The allegations of Paragraphs 1, 6, 10 and 11 above regarding Defendant NICHOLAS TROMBETTA are realleged and incorporated by reference as though fully set forth herein.

46.   The allegations of Paragraph 5 and 6 above regarding the Avanti Management Group (hereinafter AMG) are realleged and incorporated by reference as though fully set forth herein.

-19-

47.   The allegations of Paragraph 7 above regarding the Ohio based cyber school known as Buckeye Online School for Success (hereinafter BOSS) are realleged and incorporated by reference as though fully set forth herein.

48.   The allegations of Paragraph 8 above regarding the company known as Wingspan, LLC (hereinafter Wingspan) are realleged and incorporated by reference as though fully set forth herein.

49.   The allegations of Paragraph 9 above regarding One2One Enterprises (hereinafter One2One) are realleged and incorporated by reference as though fully set forth herein.

50.   Some time after the creation of AMG in 2008 a company named PALATINE was created as a wholly owned subsidiary of AMG.  Palatine was used, among other things, to purchase and manage real estate and airplanes.  Palatine was wholly owned by AMG and thus subject to the direction and control of Defendant NICHOLAS TROMBETTA.  For instance, in late 2010, at the direction of the defendant, NICHOLAS TROMBETTA, Palatine purchased a twin engine airplane from a person known to the grand jury for the sum of approximately $300,000.

51.   It was the object of the conspiracy to conceal the true nature, source and amount of the income of the Defendant, NICHOLAS TROMBETTA.  This was accomplished by diverting such income to AMG, where it accumulated for his future use, and to One2One,

-20-

where it was available as current income.  This was done in order
to defraud the IRS by impeding, impairing, obstructing and
defeating the lawful functions of the IRS in the ascertainment,
computation, assessment, and collection of revenue, that is, income
taxes, from the Defendant, NICHOLAS TROMBETTA.  In so doing, the
defendant, NICHOLAS TROMBETTA, also concealed his position as the
direct beneficiary and recipient of funds generated by PA Cyber,
the school wherein he held the position of CEO.  Thus, the
Defendant, NICHOLAS TROMBETTA, by concealing his true income from
the IRS, also attempted to avoid public discovery and scrutiny of
his conflict of interest as the controlling party on both sides of
transactions involving PA Cyber and NNDS, and then, in turn, as the
controlling party on both sides of transactions between NNDS and
AMG, and AMG and One2One.  In this manner, the Defendant, NICHOLAS
TROMBETTA, was able to ensure the continued flow of money from PA
Cyber, a public entity funded by local, state and federal tax
revenues, to entities he controlled and benefitted from.

### MANNER AND MEANS OF THE CONSPIRACY

52. It was a part of the conspiracy that Defendant
NICHOLAS TROMBETTA, in his role as CEO of PA Cyber, had the means
to influence and exert control over PA Cyber's contracts and its
payments to third parties.

53. It was a part of the conspiracy that in late 2005 and/or early 2006 Defendant NICHOLAS TROMBETTA created a company named One2One and had his sister, Elaine Trombetta Neill, put her name on it as owner/operator.

54. It was a part of the conspiracy that Defendant NICHOLAS TROMBETTA had signatory authority on the bank accounts of One2One.

55. It was a part of the conspiracy that Defendant NICHOLAS TROMBETTA created AMG and selected four straw owners to be put in place to hold and manage assets for him until an unspecified future time when Defendant NICHOLAS TROMBETTA would assume ownership of AMG, overtly, by causing the straw owners to relinquish a substantial portion of their "on paper" ownership interest to him, leaving him with an overt controlling interest in AMG.

56. It was a part of the conspiracy that through management contracts between PA Cyber and NNDS, and between NNDS and AMG, both of which were put in place by Defendant NICHOLAS TROMBETTA, that Defendant NICHOLAS TROMBETTA created a multi million dollar revenue stream that started at PA Cyber and flowed through to AMG. It was further a part of the conspiracy that Defendant NICHOLAS TROMBETTA did not disclose to the boards of

directors at PA Cyber and NNDS that he was personally profiting from the revenues that flowed from PA Cyber to NNDS to AMG.

57.   It was a part of the conspiracy that Defendant NICHOLAS TROMBETTA had full access to, and use of, the funds of both AMG and One2One.   During the time frame of the conspiracy Defendant NICHOLAS TROMBETTA engaged in, and caused, multiple transactions using the funds of AMG and One2One which were of personal benefit to him, to his family members and his friends. Among the many examples of these transactions are the following:

a.   In July of 2009 Defendant NICHOLAS TROMBETTA caused AMG to purchase the residence of his then girlfriend, an individual known to the grand jury as KD.   This property, located at 108 Edwards Street in Mingo Junction, Ohio, was purchased by AMG for $73,000.   The property had been purchased by KD in 2003 for $34,000.

b.   In November of 2010 Defendant NICHOLAS TROMBETTA caused AMG (through Palatine) to purchase his own former residence at 1816 Norton Place in Steubenville, Ohio.   As a result of this transaction AMG paid off a lien on the property which was in Defendant NICHOLAS TROMBETTA'S name in the amount of $110,310.   Also, as a part of this transaction, a Palatine check in the amount of $47,695

was made out to Defendant NICHOLAS TROMBETTA and subsequently deposited into the One2One bank account.

c.   In April of 2011 Defendant NICHOLAS TROMBETTA caused AMG to purchase a four bedroom, five bathroom condominium located at 23717 Trevi Court, Bonita Springs, Florida, 34134, for $933,000. Although the property was paid for in full by AMG (through Palatine) it was initially titled in the name of Defendant NICHOLAS TROMBETTA. In December 2011 the property was transferred into the name of Palatine.

d.   On or about January 3, 2012, Defendant NICHOLAS TROMBETTA caused AMG to issue a check, dated December 30, 2011, to One2One for $90,000. Defendant NEAL PRENCE characterized this check to AMG personnel as being for "year end services" when in truth and in fact, as Defendant NICHOLAS TROMBETTA and Defendant NEAL PRENCE both well knew, One2One provided no services at all to AMG.

e.   Throughout the period of the conspiracy Defendant NICHOLAS TROMBETTA caused employees of AMG, and their spouses, to make financial contributions to political candidates of Defendant NICHOLAS TROMBETTA's choosing. When AMG employees made such contributions, out of their

own checking accounts so as to make the checks appear to be from them, they were reimbursed from the funds of AMG. By this means Defendant NICHOLAS TROMBETTA directed payments of more than $40,000 to political candidates of his choosing using the funds of AMG.

58.   It was a part of the conspiracy that Defendant NICHOLAS TROMBETTA, throughout the period August 2008 through June 2012, caused AMG to issue checks, on a periodic basis, in amounts up to $18,000 per month, to One2One even though One2One provided no services or anything of value to AMG.   Throughout the period of the Indictment, Defendant NICHOLAS TROMBETTA had access to, and use of, the funds deposited to the accounts of One2One.

59.   It was a part of the conspiracy that the checks issued to One2One by AMG were recorded in the books and records of AMG as "consulting fees" even though, as Defendant NICHOLAS TROMBETTA well knew, One2One was not providing anything of value to AMG. This was done to conceal income flowing to Defendant NICHOLAS TROMBETTA.

60.   It was a part of the conspiracy that Defendant NICHOLAS TROMBETTA directed third parties to forward funds that were intended for him to One2One to be deposited into the accounts of One2One and recorded on the books of One2One, even though in truth these funds were income to Defendant NICHOLAS TROMBETTA.

61.   It was a part of the conspiracy that Defendant NEAL PRENCE and Defendant NICHOLAS TROMBETTA caused income attributable to Defendant NICHOLAS TROMBETTA to be reported on the federal income tax returns of Elaine Trombetta Neill on Schedule C, Profit or Loss from Business - in this case One2One, attached to her return, instead of on the returns of Defendant NICHOLAS TROMBETTA, as the income should have been reported.

62.   It was a part of the conspiracy that Defendant NEAL PRENCE and Defendant NICHOLAS TROMBETTA caused income attributable to Defendant NICHOLAS TROMBETTA to be reported on the tax returns of each of the four straw owners of AMG, instead of on the returns of Defendant NICHOLAS TROMBETTA, as the income should have been reported.

63.   It was a part of the conspiracy that Defendant NEAL PRENCE knowingly prepared federal income tax returns for Defendant NICHOLAS TROMBETTA, for the period 2006 through 2011, which greatly understated the income of Defendant NICHOLAS TROMBETTA.

64.   It was a part of the conspiracy that Defendant NEAL PRENCE prepared two different sets of computations of the annual federal income tax returns for each of the four "on paper" owners of AMG.  One of these computations showed the actual or true income and the tax that was due based on what each "on paper" owner actually earned from his or her AMG salary -- no return was filed

-26-

based on these computations.  The second set of computations, which resulted in a return being filed with the Internal Revenue Service, showed income and tax due based on what the "on paper" owner would have received if they had actually received a proportionate share of the profits of AMG (which they did not).  This practice of preparing two sets of computations for each of the "on paper" owners -- only one of which was actually filed with the IRS -- was done for the purpose of having the "on paper" owners report income on their federal income tax returns which should in fact have been reported on the returns of Defendant NICHOLAS TROMBETTA.  At all times during the years in question, Defendant NEAL PRENCE was fully aware that none of the four "on paper" owners ever actually received the purported net income of AMG, although PRENCE reported this income on their federal income tax return each year.  When the federal income tax returns with the additional federal income tax due for each of the four "on paper" owners was filed with the IRS, the tax was paid with funds from the AMG bank account, not from the funds of each of the four "on paper" owners.

65.  It was a part of the conspiracy that Defendant NICHOLAS TROMBETTA and Defendant NEAL PRENCE, in and around June and July of 2012, collaborated on the creation of a company called Presidio Education Network, LLC, a company that was to be wholly owned by Defendant NICHOLAS TROMBETTA.  This company was to be used

-27-

by Defendant NICHOLAS TROMBETTA to send invoices to AMG to drain away the money that had accumulated in the AMG bank accounts.

66.   It was a part of the conspiracy that throughout the period 2006 through 2012, Defendants NICHOLAS TROMBETTA and NEAL PRENCE shifted more than $8,000,000 in income attributable to Defendant NICHOLAS TROMBETTA to the federal income tax returns of other persons, that is his sister, Elaine Trombetta Neill and the four "on paper" owners of AMG, so that the true income of Defendant NICHOLAS TROMBETTA was concealed from legitimate taxing authorities.

## OVERT ACTS

67.   In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Western District of Pennsylvania and elsewhere:

a) In 2006 Defendant NICHOLAS TROMBETTA deposited and caused to be deposited to the One2One bank account, $236,000 in payments from BOSS and Wingspan that came through Martlin Management;

b) In 2006 Defendant NICHOLAS TROMBETTA deposited and caused to be deposited to the One2One bank account, $59,000 in payments directly from BOSS;

c) In 2007 Defendant NICHOLAS TROMBETTA deposited and caused to be deposited to the One2One bank account, $65,000 in payments from BOSS;

d) In 2008 Defendant NICHOLAS TROMBETTA deposited and caused to be deposited to the One2One bank account, $48,750 in payments from BOSS;

e) Throughout the calendar year 2008, Defendant NICHOLAS TROMBETTA caused AMG to issue checks to One2One, on a periodic basis, in an aggregate amount of $30,000;

f) Throughout the calendar year 2009, Defendant NICHOLAS TROMBETTA caused AMG to issue checks to One2One, on a periodic basis, in an aggregate amount of $80,000;

g) Throughout the calendar year 2010, Defendant NICHOLAS TROMBETTA caused AMG to issue checks to One2One, on a periodic basis, in an aggregate amount of $157,200;

h) Throughout the calendar year 2011, Defendant NICHOLAS TROMBETTA caused AMG to issue checks to One2One, on a periodic basis, in an aggregate amount of $339,989;

i) Throughout the calendar year 2012, up through approximately June of 2012, Defendant NICHOLAS TROMBETTA caused AMG to issue checks to One2One in an aggregate amount of at least $18,000;

j) Defendant NEAL PRENCE prepared a joint federal income tax form 1040 for Elaine Trombetta Neill for the calendar year 2006 which was filed by Elaine Trombetta Neill on or about June 12, 2007, which contained false and misleading information concerning the income and expenses of One2One;

k) Defendant NEAL PRENCE prepared a joint federal income tax form 1040 for Elaine Trombetta Neill for the calendar year 2007 which was filed by Elaine Trombetta Neill on or about June 18, 2008, which contained false and misleading information concerning the income and expenses of One2One;

l) Defendant NEAL PRENCE prepared a joint federal income tax form 1040 for Elaine Trombetta Neill for the calendar year 2008 which was filed by Elaine Trombetta Neill on or about June 19, 2009, which contained false and misleading information concerning the income and expenses of One2One;

m) Defendant NEAL PRENCE prepared a joint federal income tax form 1040 for Elaine Trombetta Neill for the calendar year 2009 which was filed by Elaine Trombetta Neill on or about April 1, 2010, which contained false and misleading information concerning the income and expenses of One2One;

n) Defendant NEAL PRENCE prepared a joint federal income tax form 1040 for Elaine Trombetta Neill for the calendar year 2010 which was filed by Elaine Trombetta Neill on or about September 19,

-30-

2011, which contained false and misleading information concerning the income and expenses of One2One;

o) On or about May 27, 2009, Defendant NICHOLAS TROMBETTA caused AMG to issue 3 checks, AMG check 1301 ($20,000), AMG check 1302 ($20,000) and AMG check 1303 ($10,000), to NICHOLAS TROMBETTA in the total amount of $50,000;

p) On or about October 26, 2009, Defendant NICHOLAS TROMBETTA caused AMG to issue a check (AMG check #1487) to One2One in the amount of $12,000;

q) On or about November 20, 2009, Defendant NICHOLAS TROMBETTA caused AMG to issue a check (AMG check #1546) to One2One in the amount of $12,000;

r) On or about December 26, 2009, Defendant NICHOLAS TROMBETTA caused AMG to issue a check (AMG check #1612) to One2One in the amount of $12,000;

s) On or about January 29, 2010, Defendant NICHOLAS TROMBETTA caused AMG to issue a check (AMG check #1674) to One2One in the amount of $12,000;

t) On or about June 16, 2010, Defendant NICHOLAS TROMBETTA caused AMG to issue a check (AMG check #1920) to One2One in the amount of $12,000;

u) On or about December 2, 2010, Defendant NICHOLAS TROMBETTA caused AMG to issue a check (AMG check #2167) to One2One in the amount of $18,000;

v) On or about January 31, 2011, Defendant NICHOLAS TROMBETTA caused AMG to issue a check (AMG check #2256) to One2One in the amount of $18,000;

w) On or about June 30, 2011, Defendant NICHOLAS TROMBETTA caused AMG to issue a check (AMG check #2528) to One2One in the amount of $18,000;

x) On or about December 30, 2011, Defendant NICHOLAS TROMBETTA caused AMG to issue a check (AMG check #2817) to One2One in the amount of $90,000;

y) On or about April 19, 2011, Defendant NEAL PRENCE prepared and caused to be filed, a joint federal income tax return form 1040 for the calendar year 2010 which contained information concerning the income and expenses of RB and which falsely overstated the amount of income attributable to RB and the tax due and owing thereon;

z) On or about April 19, 2011, Defendant NEAL PRENCE prepared and caused to be filed, a joint federal income tax return form 1040 for the calendar year 2010 which contained information concerning the income and expenses of BG and which falsely

overstated the amount of income attributable to BG and the tax due and owing thereon;

aa)   On or about April 19, 2011, Defendant NEAL PRENCE prepared and caused to be filed, a joint federal income tax return form 1040 for the calendar year 2010 which contained information concerning the income and expenses of RM and which falsely overstated the amount of income attributable to RM and the tax due and owing thereon;

bb) On or about April 19, 2011, Defendant NEAL PRENCE prepared and caused to be filed, a joint federal income tax return form 1040 for the calendar year 2010 which contained information concerning the income and expenses of JP and which falsely overstated the amount of income attributable to JP and the tax due and owing thereon;

cc) On or about April 17, 2012, Defendant NEAL PRENCE prepared and caused to be filed, a joint federal income tax return form 1040 for the calendar year 2011 which contained information concerning the income and expenses of RB and which falsely overstated the amount of income attributable to RB and the tax due and owing thereon;

dd)   On or about April 19, 2012, Defendant NEAL PRENCE prepared and caused to be filed, a joint federal income tax return form 1040 for the calendar year 2011 which contained information

concerning the income and expenses of BG and which falsely overstated the amount of income attributable to BG and the tax due and owing thereon;

ee) On or about April 17, 2012, Defendant NEAL PRENCE prepared and caused to be filed, a joint federal income tax return form 1040 for the calendar year 2011 which contained information concerning the income and expenses of RM and which falsely overstated the amount of income attributable to RM and the tax due and owing thereon;

ff) On or about April 17, 2012, Defendant NEAL PRENCE prepared and caused to be filed, a joint federal income tax return form 1040 for the calendar year 2011 which contained information concerning the income and expenses of JP and which falsely overstated the amount of income attributable to JP and the tax due and owing thereon;

gg)    Presidio Education Network, LLC, located at 922 Rhovanion Drive, East Liverpool, Ohio 43920, was created by Defendant NICHOLAS TROMBETTA in or around July of 2012;

hh)    On or about June 25, 2012, Defendant NICHOLAS TROMBETTA and Defendant NEAL PRENCE discussed the manner and means of getting money out of AMG and into Presidio.

All in violation of Title 18, United States Code, Section 371.

-34-

## COUNT SEVEN

### (26 U.S.C. §7206(1))

**Nicholas Trombetta False Tax Return for 2007**

The Grand Jury further charges:

68.  Paragraphs 44 through 67 are incorporated by reference as though fully set forth herein.

69.  That on or about April 24, 2008, in the Western District of Pennsylvania, the defendant, NICHOLAS TROMBETTA, a resident of East Liverpool, Ohio, did willfully make and subscribe a form 1040 federal income tax return for the calendar year 2007, which was verified by a written declaration that it was made under the penalties of perjury and which NICHOLAS TROMBETTA did not believe to be true and correct as to every material matter.  That form 1040 federal income tax return, which was prepared and electronically filed in the Western District of Pennsylvania and was filed with the Internal Revenue Service, stated that NICHOLAS TROMBETTA had adjusted gross income only in the amount of $206,099 whereas, as NICHOLAS TROMBETTA then and there well knew, for the calendar year 2007, he had substantial additional unreported income.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT EIGHT

### (26 U.S.C. §7206(1))

**Nicholas Trombetta False Tax Return for 2008**

The Grand Jury further charges:

70. Paragraphs 44 through 67 are incorporated by reference as though fully set forth herein.

71. That on or about March 9, 2009, in the Western District of Pennsylvania, the defendant, NICHOLAS TROMBETTA, a resident of East Liverpool, Ohio, did willfully make and subscribe a form 1040 federal income tax return for the calendar year 2008, which was verified by a written declaration that it was made under the penalties of perjury and which NICHOLAS TROMBETTA did not believe to be true and correct as to every material matter. That form 1040 federal income tax return, which was prepared and electronically filed in the Western District of Pennsylvania and was filed with the Internal Revenue Service, stated that NICHOLAS TROMBETTA had adjusted gross income only in the amount of $142,418 whereas, as NICHOLAS TROMBETTA then and there well knew, for the calendar year 2008, he had substantial additional unreported income.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT NINE

### (26 U.S.C. §7206(1))

**Nicholas Trombetta False Tax Return for 2009**

The Grand Jury further charges:

72. Paragraphs 44 through 67 are incorporated by reference as though fully set forth herein.

73. That on or about March 15, 2010, in the Western District of Pennsylvania, the defendant, NICHOLAS TROMBETTA, a resident of East Liverpool, Ohio, did willfully make and subscribe a form 1040 federal income tax return for the calendar year 2009, which was verified by a written declaration that it was made under the penalties of perjury and which NICHOLAS TROMBETTA did not believe to be true and correct as to every material matter. That form 1040 federal income tax return which was prepared and electronically filed in the Western District of Pennsylvania and was filed with the Internal Revenue Service stated that NICHOLAS TROMBETTA had adjusted gross income only in the amount of $127,000 whereas, as NICHOLAS TROMBETTA then and there well knew, for the calendar year 2009, he had substantial additional unreported income.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT TEN

### (26 U.S.C. §7206(1))

**Nicholas Trombetta False Tax Return for 2010**

The Grand Jury further charges:

74.  Paragraphs 44 through 67 are incorporated by reference as though fully set forth herein.

75.  That on or about April 19, 2011, in the Western District of Pennsylvania, the defendant, NICHOLAS TROMBETTA, a resident of East Liverpool, Ohio, did willfully make and subscribe a form 1040 federal income tax return for the calendar year 2010, which was verified by a written declaration that it was made under the penalties of perjury and which NICHOLAS TROMBETTA did not believe to be true and correct as to every material matter.  That form 1040 federal income tax return which was prepared and electronically filed in the Western District of Pennsylvania and was filed with the Internal Revenue Service stated that NICHOLAS TROMBETTA had adjusted gross income only in the amount of $130,313 whereas, as NICHOLAS TROMBETTA then and there well knew, for the calendar year 2010, he had substantial additional unreported income.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT ELEVEN

(Title 26 U.S.C. §7206(1))

**Nicholas Trombetta False Tax Return for 2011**

The Grand Jury further charges:

76. Paragraphs 44 through 67 are incorporated by reference as though fully set forth herein.

77. That on or about April 12, 2012, in the Western District of Pennsylvania, the defendant, NICHOLAS TROMBETTA, a resident of East Liverpool, Ohio, did willfully make and subscribe a form 1040 federal income tax return for the calendar year 2011, which was verified by a written declaration that it was made under the penalties of perjury and which NICHOLAS TROMBETTA did not believe to be true and correct as to every material matter. That form 1040 federal income tax return which was prepared and electronically filed in the Western District of Pennsylvania and was filed with the Internal Revenue Service stated that NICHOLAS TROMBETTA had adjusted gross income only in the amount of $133,899 whereas, as NICHOLAS TROMBETTA then and there well knew, for the calendar year 2011, he had substantial additional unreported income.

In violation of Title 26, United States Code, Section 7206(1).

## CRIMINAL FORFEITURE ALLEGATION

78. The United States hereby gives notice to the defendant, NICHOLAS TROMBETTA, charged in Counts One through Five, that, upon his conviction of any such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses, including but not limited to the following:

A sum of money equal to at least approximately $990,000 in United States currency;

79. If any of the above-described forfeitable property, that is cash in the amount of $990,000, as a result of any act or omission of the defendant:

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party;

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant, NICHOLAS TROMBETTA, up to the value of the forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p)).

A True Bill,

_____
FOREPERSON

_____
DAVID J. HICKTON
United States Attorney
PA ID No. 34524

-41-