IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 13-227 |
| NICHOLAS TROMBETTA<br>NEAL PRENCE | |

**GOVERNMENT'S POSITION WITH RESPECT TO THE IMPACT OF**
**THE THIRD CIRCUIT OPINION IN UNITED STATES v DOUGLAS**

AND NOW comes the United States of America, by its attorneys, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, and Stephen R. Kaufman, James R. Wilson, and Robert S. Cessar, Assistant United States Attorneys in and for said district, and submits the following in response to the Court's order seeking additional briefing on the issue of a sentence enhancement for abuse of a position of trust (Doc. No. 355).

### I. BACKGROUND

1. Defendant Trombetta entered a plea of guilty to Count Six of the Indictment at Cr. No. 13-227 on August 24, 2016.(Doc. No. 238.) As a part of his plea he stipulated to the facts set forth in Count Six of the Indictment.

2. Defendant Prence entered a plea of guilty to Count Six of the Indictment at Cr. No. 13-227 on August 24, 2016.(Doc. No. 248.)

3. The Presentence Investigation Report for Defendant Trombetta awarded a two level adjustment for Role in the Offense for abuse of a position of public or private trust pursuant to USSG §3B1.3, predicated upon his having held a position of public trust as Chief Executive Officer ("akin to a superintendent of any other public school") of PA Cyber ("a school receiving public taxpayer funds for its operations"). (Paragraph 34, Doc. 266.) The Prence Presentence

Investigation Report has no corresponding adjustment for role in the offense (Paragraph 29, Doc. 282).

4.      The government has previously addressed the application of this adjustment in a Memorandum of Law at Doc. 328, pgs. 4, 14-17.

5.      As a part of Defendant Trombetta's guilty plea he stipulated to all the factual assertions of Count Six of the Indictment.[1]

## II.  The Holding and Significance of *United States* v. *Douglas*

6.      In *United States* v. *Douglas*, 885 F.3d 124 (3d Cir. 2018); (*en banc*), the *en banc* court of the United States Court of Appeals for the Third Circuit refined its approach to application of the United States Sentencing Guidelines provision found at §3B1.3.  This provision requires a two-level adjustment to the offense level calculation "[i]f the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense."

7.      The long-standing inquiry for appropriate application of §3B1.1, set forth in *United States* v. *Pardo*, 25 F.3d 1187, 1192 (3d Cir. 1994), requires first, a determination of whether the defendant actually occupied a position of public or private trust.  *Douglas*, 885 F.3d at 130 (citing *United States* v. *Iannone*, 184 F.3d 214, 222 (3d Cir. 1999)).  The answer to this question resulted from consideration of "(1) whether the position allows the defendant to commit a difficult-to-detect wrong; (2) the degree of authority which the position vests in defendant vis-à-vis the object of the wrongful act; and (3) whether there has been reliance on the integrity of

---

[1] Defendant Trombetta's stipulation and its impact on the plea and sentence process has been discussed, in part, in Government's Response to Defendant's Position with Respect to Sentencing Factors (Doc. 299) at pgs. 1 through 5.

the person occupying the position." *Id.* (quoting *Pardo*, 25 F.3d at 1192).  If, after application of each of these factors, a defendant held such a position, the next question is whether the defendant "abused this position in a manner that significantly facilitated his crime." *Id.*

8.	After identifying various shortcomings to this approach, *id.* at 131-33, the Third Circuit articulated a refined test which requires the sentencing court to ask, in determining whether a defendant occupied a position of trust: "whether the defendant had the power to make decisions **substantially free from supervision** based on (1) a fiduciary or fiduciary-like relationship, or (2) an authoritative status that would lead his actions or judgment to be presumptively accepted." *Id.* at 133  (emphasis added).

9.	Significantly, in answering the first question, a sentencing court "will not consider the context of the crime committed, because, . . . the text of the Guideline requires that we first determine whether the defendant held a position that qualifies for the enhancement. The defendant's crime is not relevant to the status-focused inquiry." *Id.* As for the second question, a court may consider the *Pardo* factors, specifically: "among other things, whether the defendant's position allowed him to commit a difficult-to-detect wrong, and the defendant's authority vis-à-vis the object of the wrongful act. Courts may also consider whether the victim relied on the defendant's integrity, such that the victim became a more susceptible target for the defendant." *Id.* at 134.  All of the *Pardo* factors need not be satisfied in order for the enhancement to apply. *Id*. Nonetheless, "courts should not impose the enhancement if the defendant's status provided merely some assistance. The text of the Guideline makes clear that the defendant must abuse his position in a manner that *significantly* facilitated the commission or concealment of the offense." (emphasis in original) *Id.*

### III.   DISCUSSION OF *DOUGLAS* IN THE CONTEXT OF THE TROMBETTA PLEA

10.   Under the refined approach of the *Douglas* Court it becomes glaringly apparent that Defendant Trombetta qualifies for the abuse of a position of trust adjustment pursuant to §3B1.3.  As is set forth more specifically below, it is abundantly clear that he wielded the power to make decisions substantially free from supervision, based on a fiduciary-like obligation to the public.  Also, his status left him in a position where his decisions were presumptively accepted.

**The Factual Foundation for Application of USSG §3B1.3**

11.   The facts to which Defendant Trombetta has stipulated compel an application of §3B1.3 on Abuse of a Position of Trust.  A brief review of certain provisions of Count Six suffices:

    a.   In paragraph 51 of Count Six the parties stipulate that "It was the object of the conspiracy to conceal the true nature, source and amount of the income of the Defendant, NICHOLAS TROMBETTA."  After acknowledging that this was done to "defraud the IRS" the stipulation goes on to add that, "In so doing, the defendant, NICHOLAS TROMBETTA, also concealed his position as the direct beneficiary and recipient of funds generated by PA Cyber, the school wherein he held the position of CEO.  Thus, the Defendant, NICHOLAS TROMBETTA, by concealing his true income from the IRS, also attempted to avoid public discovery and scrutiny of **his conflict of interest as the controlling party on both sides of transactions involving PA Cyber and NNDS, and then, in turn, as the controlling party on both sides of transactions between NNDS and AMG, and AMG and One2One.**  In this manner, the Defendant, NICHOLAS TROMBETTA, was able to ensure the continued flow of money from PA Cyber, a public entity funded by local, state and federal tax revenues, to entities he controlled and benefitted from." (emphasis added)

    b.   In paragraph 52 the defendant essentially stipulates to his abuse of a position of public trust:

"It was a part of the conspiracy that Defendant NICHOLAS TROMBETTA, in his role as CEO of PA Cyber, had the means to influence and **exert control** over PA Cyber's contracts and its payments to third parties." [Including the arrangements identified in paragraph 51 above.](emphasis added)

4

    c. Paragraph 56 of Count Six provides:

"It was a part of the conspiracy that through management contracts between PA Cyber and NNDS, and between NNDS and AMG, **both of which were put in place by Defendant NICHOLAS TROMBETTA**, that Defendant NICHOLAS TROMBETTA created a multi million dollar revenue stream that started at PA Cyber and flowed through to AMG. It was further a part of the conspiracy that Defendant **NICHOLAS TROMBETTA did not disclose to the boards of directors at PA Cyber and NNDS that he was personally profiting** from the revenues that flowed from PA Cyber to NNDS to AMG" (emphasis added).

    d. In paragraph 9, incorporated into Count Six in paragraph 49, the defendant acknowledges, "In actuality, One2One served as a vehicle to allow Defendant NICHOLAS TROMBETTA **to use his position of influence over PA Cyber, NNDS, AMG, BOSS, Wingspan and other entities in the private sector to covertly channel money to himself,** to Elaine Trombetta Neill, to other family members and to other persons.
(emphasis added)

12.     There is no factual quarrel with the proposition that Defendant Trombetta, as CEO of PA Cyber (see paragraph 1 of the Indictment) enjoyed a virtually unchallenged capacity to bind PA Cyber and direct the flow of its funds (tax revenues) to entities that he desired (NNDS) and eventually to entities that he controlled (AMG/One2One) and from which he could extract monies virtually at will, all comprising an enormous conflict of interest. This fact is indeed acknowledged by his codefendant, Mr. Prence. In Government's Exhibit 14 from the hearing held March 28, 2018 the following exchange takes place, highlighting Defendant Trombetta's control of the various entities and his transparent purpose to enrich himself. Recording 1D19 between Brett Geibel and Neil Prence, March 28, 2012, starting at pg. 22, contains the following:

    **BG:** Um I mean is there anything, so you know, somebody looks at it [AMG revenue and taxes as per previous discussion] and says well you know it looks like...

    **NP:** I wouldn't (UI) into that because, ah, then it, it gives away the whole plan which I think is bad, I mean I think it's nothing we want anyone to know.

**BG:** About?

**NP:** About Dr. T. being the true owner. I don't think we want anyone to know that. If somebody knows that and doesn't like him don't you think they could cause a lot of trouble for him?
... [discussion about paying taxes and the acknowledgement by Neal Prence that he puts Trombetta's income on other peoples' returns] continued at pg. 26...

**NP:** What do you think? What's your take? Don't you see that, I mean forget about the tax issues all together. Just think, you have a company, that's his (UI)

BG: Yeah

**NP:** And he has this school which controls NNDS, which controls Avanti,

**BG:** PA Cyber

**NP:** And (UI) he benefits from it. The accumulation is his.

**BG:** Sure.

**NP:** Nick has a giant conflict of interest.

13. It is noteworthy that the "giant conflict of interest" embodied in Defendant Trombetta's control of PA Cyber, which in turn controls NNDS, which in turns funnels money to Avanti, which Defendant Prence characterizes as "his (Trombetta's) company", is so readily apparent, and so unremarkable, to both Defendant Prence and Mr. Geibel. Given his role as the return preparer for Trombetta, and the four straw owners of AMG as well as AMG itself, Defendant Prence had an up close and unobstructed view of the degree of control exercised by Defendant Trombetta relative to all the entities in question, resulting in the flow of money through the pipeline from PA Cyber to Avanti. And this conflict was born of Trombetta's position of authority at PA Cyber and his ability to engage in a steady pattern of undisclosed self dealing that enriched him to the tune of millions of dollars in additional unreported income (See paragraph 66 of Count Six).

6

14. Insofar as *Douglas* counsels a "status focused" inquiry for the abuse of a position of trust adjustment, it is readily apparent that not only did Defendant Trombetta's status as the CEO of PA Cyber facilitate the fraud and tax avoidance activity, but these activites were wholly dependent on his oversight, control and manipulation, as embodied in the "arrangements" entered into between PA Cyber and NNDS and later between NNDS and Avanti.  Nowhere is the practical effect of his status seen more clearly than in his creation of Avanti through his selection of compliant straw owners who were, as the stipulation says, "persons who would take direction regarding the operation and management of AMG from Defendant Nicholas Trombetta" (Paragraph 6 incorporated into Count 6 via paragraph 45) and his creation of a relationship between NNDS and Avanti so as to permit the flow of PA Cyber monies to a place where he could access and control it.  (Again, referencing paragraph 51 of Count 6.)

## IV.     CONCLUSION

For these reasons, as well as those set forth in the government's Memorandum of Law at Doc. 328, pgs. 4, 14-17, the record firmly establishes by a preponderance of the evidence that Defendant Trombetta properly qualifies for the two-level adjustment for his role in the offense as set forth in U.S.S.G. §3B1.3.  The facts to which he has stipulated and pled guilty, complemented by those contained within Government's Exhibit 14 from the March 28, 2018, hearing demonstrate beyond any doubt that Defendant Trombetta possessed and exercised the power and authority to make decisions substantially free from supervision, decisions that were presumptively accepted.

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

s/James R. Wilson
JAMES R. WILSON
Assistant U.S. Attorney
PA ID No. 27648

s/Stephen R. Kaufman
STEPHEN R. KAUFMAN
Assistant U.S. Attorney
PA ID No. 42108

s/Robert S. Cessar
ROBERT S. CESSAR
Assistant U.S. Attorney
PA ID No. 47736